**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 21-20111 (JJT) |
| | ) | | |
| OLD CP, INC., *et al.*, | ) | Jointly Administered | |
| | ) | | |
| Debtors. | ) | CHAPTER | 11 |
| | ) | | |
| THE DENNIS ENGINEERING GROUP, LLC, | ) | | |
| | ) | | |
| Plaintiff, | ) | Adv. Pro. Case No. | 21-02004 (JJT) |
| | ) | | |
| v. | ) | | |
| | ) | RE: ECF Nos. | 215, 270, 278 |
| PEOPLE'S UNITED BANK, N.A. and | ) | | |
| BMO HARRIS BANK, N.A., | ) | | |
| | ) | | |
| Defendants. | ) | | |

**SECOND MEMORANDUM OF DECISION AND RULING**
**ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION

Before the Court are two dueling motions for partial summary judgment.  The

Defendants, People's United Bank, N.A. ("PUB") and BMO Harris Bank, N.A. ("BMO", and

together with PUB, the "Lenders"), have moved for partial summary judgment on Count One of

their Counterclaim (ECF No. 72, "Defs.' Answer and Countercl." or "Countercl.") and their

Objection to the Plaintiff's proof of claim (Defs.' Am. Obj. to Proof of Claim No. 4, BR-ECF

No. 1139, Case No. 21-20111, the "Objection"), as well as Count One of the Plaintiff's

Complaint (ECF No. 16).  Defs.' Mot. for Partial Summ. J., ECF No. 215 (the "Motion").  In

response, the Plaintiff, The Dennis Engineering Group, LLC ("Dennis Group"), has moved for

partial summary judgment on Count One of its Complaint and Count One of the Lenders'
Counterclaim.  Pl.'s Cross-Mot. for Partial Summ. J., ECF No. 270 (the "Cross-Motion", and
together with the Motion, the "Motions").  The Plaintiff and the Defendants (collectively, the
"Parties") each seek various declaratory judgment rulings as to the validity and scope of Dennis
Group's Certificate of Mechanic's Lien (the "Mechanic's Lien").

The dispute between the Parties centers around their claimed entitlement to
approximately $24,891,123.00 of proceeds (the "Proceeds") generated from the judicial sale of
certain properties (the "Properties") in the Debtors' (as defined in Part IV) main bankruptcy
case.[1]  To protect its rights to the Proceeds, Dennis Group filed a thirteen-count Complaint
against the Lenders.  Among other claims for relief, Dennis Group seeks to determine the extent
and validity of the Lenders' Mortgage (as defined in Part IV) against the Proceeds; and a
declaratory judgment that its Mechanic's Lien is senior in priority to the Lenders' Mortgage,
such that Dennis Group would be entitled to the Proceeds from the sale of the Properties.
Compl. at 10.  In response, the Lenders raised several affirmative defenses and pled various
counterclaims; in particular, the Lenders asserted a counterclaim requesting a declaratory
judgment stating that Dennis Group's Mechanic's Lien is fully subordinate in priority to the
Lenders' Mortgage.  Countercl. at 37.  They also alleged that the Mechanic's Lien is invalid
because it was untimely filed and requested a declaratory judgment to that effect.  *Id.*

Dennis Group previously moved for summary judgment on Counts Two, Six, and Seven
of its Complaint, which alleged claims of fraud, breach of the duty of good faith and fair dealing,
and breach of contract, respectively.  Pl.'s Mot. for Partial Summ. J. at 1, ECF No. 175 (the
"First SJ Motion").  The Lenders opposed Dennis Group's motion and moved for partial

---

[1] The subject Properties were located at 50 Talbot Lane and 280 Nutmeg Road in South Windsor, Connecticut.  The
judicial sale of the Properties proceeded under 11 U.S.C. § 363.

summary judgment on Count One of the Complaint and Count One of their Counterclaim, seeking a declaratory judgment affirming the Mechanic's Lien's subordination to the Mortgage. Defs.' Cross-Mot. for Partial Summ. J. at 1–2, ECF No. 222 (the First SJ Cross-Motion, and together with the First SJ Motion, the "First SJ Motions").

On January 4, 2023, the Court ruled on the First SJ Motions and issued its First Memorandum of Decision and Ruling on Partial Cross-Motions for Summary Judgment.  ECF No. 326 (the "First SJ Ruling").  The Court denied Dennis Group summary judgment on Counts Two, Six, and Seven of its Complaint for its failure to demonstrate that the Lenders had a duty to provide notice to Dennis Group of the Debtors' defaults under the Credit Agreement (as defined in Part IV).  The Court also granted the Lenders partial summary judgment on Count One of both the Complaint and Counterclaim, issuing a declaratory judgment that Dennis Group's subordination of its Mechanic's Lien to the Lenders' Mortgage was presumptively valid and enforceable.  The Court reserved the remaining elements of the Lenders' declaratory judgment claims as to the validity and scope of the Mechanic's Lien for further consideration in this decision.  Dennis Group's remaining declaratory claims in avoidance of the subordination of its claims to the Proceeds were reserved for trial.

As to the present Motions, on March 14, 2022, the Lenders again moved for an order granting partial summary judgment on Count One of their Counterclaim, their Objection, and Dennis Group's Complaint.  Mot. at 1–2.  This time, the Lenders seek a ruling declaring that Dennis Group's Mechanic's Lien is untimely and therefore invalid, and that Dennis Group's claim to the Proceeds is, consequently, only that of an unsecured creditor.  *Id.*  The Lenders raise three distinct arguments in support of their contention: (1) the Mechanic's Lien is untimely because it was filed more than ninety days after Dennis Group completed its work; or (2) any

work performed by Dennis Group within the ninety days before it recorded its Mechanic's Lien was not lienable; or (3) the time to record Dennis Group's Mechanic's Lien should commence from the date of substantial completion of its work.  Defs.' Mem. at 1–2, ECF No. 215-1.  In the alternative, the Lenders seek a ruling declaring that Dennis Group's Mechanic's Lien be reduced to exclude non-lienable work Dennis Group charged to the Debtors.  *Id.* at 2.

On April 4, 2022, Dennis Group responded in opposition by filing its Cross-Motion, which substantially recharacterizes material aspects of its work for the Debtors and the filing of its Mechanic's Lien.  *See* Pl.'s Mem., ECF No. 268.  Dennis Group posits three arguments in support of its Cross-Motion: (1) the Lenders failed to timely disclose legal theories upon which part of their Motion relies; (2) Dennis Group timely recorded its Mechanic's Lien; and (3) all work supporting the Mechanic's Lien claim is lienable.  *Id.* at 1.

On April 8, 2022, the Court heard oral arguments on the Motions, after which the Court took the matter under advisement.  For the reasons that follow and based upon the undisputed material facts in this record, the Lenders' Motion is granted in part and Dennis Group's Cross-Motion is denied.

## II.    JURISDICTION

The United States District Court for the District of Connecticut (the "District Court") has jurisdiction over the instant proceeding under 28 U.S.C. § 1334(b), and the Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. §§ 157(a), (b)(1) and the General Order of Reference of the District Court dated September 21, 1984.  This Adversary Proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2).[2]

---

[2] In connection with pretrial proceedings, Dennis Group waived any claimed right to a jury trial.  ECF No. 115.

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering a motion for summary judgment, all reasonable inferences are drawn, and all ambiguities resolved, in favor of the non-moving party.  *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).  In essence,  a court must review any evidence submitted "in the light most favorable to the [non-moving] party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Additionally, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The moving party "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying [the evidence] which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Although the evidence relied upon at summary judgment need not be presented in admissible form, it must be capable of being presented at trial in admissible form. *In re Soundview Elite Ltd.*, 543 B.R. 78, 100–01 (Bankr. S.D.N.Y. 2016) ("[Rule 56(c)(2)] provides for the exclusion of [materials] that cannot be presented in a form that would be admissible in evidence — not that is *not* so presented." (emphasis in original)).  The moving party may satisfy its burden "by showing . . . that there is

an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotations and citations omitted).

If the movant successfully demonstrates that there is no genuine issue of material fact, then the burden shifts to the non-movant to "set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.  In this Circuit, summary judgment is appropriate "only when reasonable minds could not differ as to the import of the evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Cross-motions for summary judgment do not alter this basic standard — rather, they simply require the court to determine whether either party deserves judgment as a matter of law based on the undisputed material facts. *Morales v. Quintel Ent.*, 249 F.3d 115, 121 (2d Cir. 2001).  "Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Id.*  "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

## IV.    THE UNDISPUTED MATERIAL FACTS

Local Rule 56(a)(1) of the Local Rules of Civil Procedure of the District Court requires

that a party moving for summary judgment file a Local Rule 56(a)(1) Statement of Undisputed

Material Facts.  D. Conn. L. R. 56(a)(1).  Local Rule 56(a)(2), in turn, requires that an opposing

party file a Local Rule 52(a)(2) Statement of Facts in Opposition to Summary Judgment.

D. Conn. L. R. 56(a)(2).  Each material fact set forth in the movant's statement and supported by

the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such

fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the

opposing party in accordance with [the] Local Rule . . . ."  D. Conn. L. R. 56(a)(1); *see also*

*Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746–47 (Bankr. D. Conn. 2014).

Based upon its review of the Parties' summary judgment submissions and examination of

all relevant admissions contained in antecedent pleadings, the Court finds the following material

facts as to which there is no genuine dispute:

1.      On June 6, 2017, Suri Realty, LLC ("Suri") hired Dennis Group to provide certain

services necessary to expand its food production facility pursuant to the terms of that certain

Agreement for Engineering and Construction Management Services (the "Contract").  The

parties thereto commonly referred to those services as the Troppo Piccolo Expansion Project (the

"Expansion Project").  Pl.'s Local Rule 56(a)(2) Statement at 1 ¶ 1, ECF No. 269 ("Pl.'s 56(a)(2)

Statement").

2.      Suri was the owner of the Properties, whereas its affiliate, Carla's Pasta, Inc.

("Carla's Pasta", and together with Suri, the "Debtors"), was a separate legal entity that operated

a pasta manufacturing facility within the Properties.  BR-ECF No. 667 at 12–13, Case No. 21-

20111.

3.    Dennis Group stated that it commenced work on the Expansion Project on June 6, 2017.  Pl.'s 56(a)(2) Statement at 3 ¶ 10.  Dennis Group also stated in its Mechanic's Lien that it commenced work on the Expansion Project on April 1, 2017.  Defs.' Ex. 11, ECF No. 215-15.

4.    To finance the Expansion Project, the Debtors entered into that certain Third Amended and Restated Credit Agreement dated as of October 4, 2017 (the "Credit Agreement" or "Loan"), pursuant to which the Lenders agreed to extend an aggregate loan of $62 million.  Pl.'s 56(a)(2) Statement at 6 ¶ 22; Defs.' Ex. 16, ECF No. 215-20.

5.    On October 5, 2017, the Lenders recorded on the land records of the Town of South Windsor (the "Town") that certain Amended and Restated Open-End Construction Mortgage Deed, Security Agreement, Fixture Filing and Assignment of Leases and Rents dated as of October 4, 2017 (the "Mortgage") against the Properties, which secured the Loan.  Defs.' Answer and Countercl. at 5 ¶ 18.

6.    The Lenders' agreement to enter into the Credit Agreement was contingent on Dennis Group's execution of that certain Consent Agreement dated as of October 2, 2017 (the "Consent Agreement") and that certain Individual Subordination of Mechanic's Lien as to Lien of Mortgage (the "First Subordination Instrument").  Defs.' Answer and Countercl. at 6 ¶ 22.

7.    PUB drafted and approved the Consent Agreement that Dennis Group was asked to and ultimately did sign.  The form of Consent Agreement was attached as "Exhibit U" to the Credit Agreement.  Defs.' Answer and Countercl. at 6 ¶ 24.

8.    PUB's receipt of the executed Consent Agreement was a condition precedent to the Lenders' obligation to honor any request by the Debtors for an extension of credit for the Expansion Project.  Defs.' Answer and Countercl. at 6 ¶ 23.

9.      The Consent Agreement and the First Subordination Instrument purported to subordinate Dennis Group's Mechanic's Lien to the Lenders' Mortgage.  Defs.' Answer and Countercl. at 7 ¶ 25.

10.      By March 31, 2018, the Debtors had defaulted under the Credit Agreement. Defs.' Answer and Countercl. at 8 ¶ 35.

11.      On or about June 8, 2018, the Lenders and the Debtors executed that certain Forbearance Agreement and First Modification of Credit Agreement (the "First Forbearance Agreement").  Defs.' Answer and Countercl. at 8 ¶ 36.

12.      The First Forbearance Agreement addressed the Debtors' March 2018 default under the Credit Agreement.  Defs.' Answer and Countercl. at 8 ¶ 36.

13.      On or about October 8, 2018, Dennis Group was presented with that certain Subordination of Mechanic's Lien as to Lien of Mortgage (the "Second Subordination Instrument", and collectively with the First Subordination Instrument and the Consent Agreement, the "Subordination Documents").  Defs.' Answer and Countercl. at 7 ¶ 30.

14.      In a letter dated June 19, 2019, Dennis Group requested certificates of occupancy from the Town's Building Department (the "Town Building Department") for both the shell and interior fit-up of the Expansion Project.  As part of its request, Dennis Group represented to the Town Building Department that the Expansion Project's shell and interior fit-up was "substantially complete and ready for use. . . ."  Defs.' Ex. 7, ECF No. 215-11.

15.      Based on Dennis Group's representation, on August 13, 2019, the Town Building Department issued a certificate of occupancy for the shell of the Expansion Project ("Certificate of Occupancy #1").  Pl.'s 56(a)(2) Statement at 4 ¶ 12.

16.     Based on Dennis Group's representation, on August 14, 2019, the Town Building Department issued a certificate of occupancy for the interior fit-up of with the Expansion Project ("Certificate of Occupancy #2", and together with Certificate of Occupancy #1, the "Certificate of Occupancy").  Pl.'s 56(a)(2) Statement at 4 ¶ 13.

17.     On December 23, 2019, Dennis Group recorded on the Town's land records its Mechanic's Lien against the Properties, which secured the Contract's then-outstanding balance of $13,284,156.96.  Pl.'s 56(a)(2) Statement at 4 ¶ 14; Defs.' Ex. 11, ECF No. 215-15; Defs.' Answer and Countercl. at 5 ¶ 18.

18.     On April 27, 2020, Dennis Group filed a complaint against the Debtors in the Connecticut Superior Court, Judicial District of Hartford, Docket No. HHD-CV20-612735-S (the "State Court Complaint").  Pl.'s 56(a)(2) Statement at 2 ¶ 2.  Therein Dennis Group alleged, among other things, that the Debtors breached the Contract.  Defs.' Ex. 2, ECF No. 215-6.

19.     Paragraph 6 of the State Court Complaint states, "Dennis Group completed the construction of the building and infrastructure [*sic*] of Carla's Food Preparation Facility and performed its services pursuant to the Contract on August 14, 2019."  Pl.'s 56(a)(2) Statement at 2 ¶ 3.

20.     On July 23, 2020, Dennis Group served PUB with a notice of Suri's default under the Contract.  Pl.'s 56(a)(2) Statement at 5 ¶ 15; Defs.' Ex. 12, ECF No. 215-16.

21.     On September 2, 2020, Dennis Group filed an amended complaint against the Debtors in the Connecticut Superior Court, Judicial District of Hartford, Docket No. HHD-CV20-6127365-S (the "Amended State Court Complaint").  Pl.'s 56(a)(2) Statement at 2 ¶ 4.

22.     Notwithstanding Dennis Group's amendment to the State Court Complaint, Paragraph 6 of the Amended State Court Complaint again states, "Dennis Group completed the

construction of the building and infrastructure [*sic*] of Carla's Food Preparation Facility and performed its services pursuant to the Contract on August 14, 2019." Pl.'s 56(a)(2) Statement at 2 ¶ 5.

23.     On October 15, 2020, Dennis Group filed a revised complaint against the Debtors in the Connecticut Superior Court, Judicial District of Hartford, Docket No. HHD-CV20-6127365-S (the "Revised State Court Complaint"). Pl.'s 56(a)(2) Statement at 2 ¶ 6.

24.     Notwithstanding Dennis Group's revisions of the Amended State Court Complaint, Paragraph 6 of the Revised State Court Complaint once again states, "Dennis Group competed the construction of the building and infrastructure [*sic*] of Carla's Food Preparation Facility and performed its services pursuant to the Contract on August 14, 2019." Pl.'s 56(a)(2) Statement at 2–3 ¶ 7.

25.     On October 19, 2020, Dennis Group executed that certain Defense, Indemnification and Hold Harmless Agreement with Elm Electrical, Inc., in which it affirmed, "[O]n August 18, 2019, Dennis Group completed construction of the Food Preparation Facility and fully performed all of its obligations under the Contract and demanded final payment from Suri." Pl.'s 56(a)(2) Statement at 3 ¶ 9.

26.     On December 9, 2020, Dennis Group filed an objection in the Superior Court of Connecticut, Judicial District of Hartford, in a separate lawsuit (Docket No. HHD-CV20-6130646-S) between it and one of its subcontractors on the Expansion Project. In that objection, Dennis Group represented to the court that, "[t]he [Expansion] Project [was] completed on August 14, 2019." Pl.'s 56(a)(2) Statement at 3 ¶ 8.

27.     On October 29, 2020, Dennis Group forced Suri into bankruptcy by filing an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Suri. BR-ECF No. 1, Case No. 20-21270.

28.     Upon Suri's motion to convert the case, on December 17, 2020, the Court entered an order converting the involuntary Chapter 7 bankruptcy case to a voluntary case under Chapter 11 of the Bankruptcy Code.  BR-ECF No. 30, Case No. 20-21270.  Carla's Pasta had also filed its own voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 8, 2021.  BR-ECF No. 1, Case No. 21-20111.

29.     Both Chapter 11 cases were administratively consolidated by order of the Court on February 12, 2021.  BR-ECF No. 69, Case No. 20-21270.

30.     The Properties were sold during the consolidated Chapter 11 proceedings, with all liens, claims, and interests initially attaching to the proceeds of the sale, which were held in escrow.  After the sale, the Lenders, based on their Mortgage priority, moved for an interim disbursement of $15 million from the Proceeds.  BR-ECF No. 564, Case No. 21-20111.  On June 15, 2021, the Court granted the Lenders' request, conditional on the Lenders providing adequate protection of Dennis Group's claim of a senior mechanic's lien in the form of a surety bond. BR-ECF No. 781, Case No. 21-20111.  The Court approved the substitution of the surety bond in the amount of $15,418,497.00 for Dennis Group's claim to the Proceeds under its Mechanic's Lien.  Dennis Group's interest in the Proceeds, if any, thereafter attached to the surety bond. BR-ECF No. 781, Case No. 21-20111.

31.     In January 2021, Dennis Group analyzed the work it performed on the Expansion Project after August 14, 2019 to determine if it "performed non-trivial work."  Pl.'s 56(a)(2) Statement at 5 ¶ 16.

32.     On January 25, 2021, Kevin King, Dennis Group's primary architect and project manager on the Expansion Project, stated that after the Certificate of Occupancy was issued Dennis Group undertook work "mainly on the process side of things."  Pl.'s 56(a)(2) Statement at 5 ¶ 17.

33.     On January 26, 2021, Joe Susco ("Susco"), Dennis Group's process engineer, explained that most of the work performed after mid-September 2019 was related to starting up and addressing problems with the food-processing equipment, most of which was purchased by Carla's Pasta.  Pl.'s 56(a)(2) Statement at 5 ¶ 18; Defs.' Ex. 14, ECF No. 215-18.

34.     In responding to Susco's summary, Tom Dennis, Chief Executive Officer of Dennis Group, stated, "We will need to carefully match the timing, timecards and invoices to establish the timelines and windows required by Connecticut.  A very interesting wrinkle here that we will need to discuss Thursday; all of Joe's work seems Carla's based, not Suri.  This links us directly to Carla's [Pasta] which is very important, but does not help the timing for the [Mechanic's] Lien."  Pl.'s 56(a)(2) Statement at 5–6 ¶ 20.

35.     On February 11, 2021, Susco sent an email to coworkers indicating that Project No. 5291.1000 pertained to food-processing equipment work ("[A]ll of 5291.1000 is process related [it's] all sauce room.").  Pl.'s 56(a)(2) Statement at 6 ¶ 21; Defs.' Ex. 15, ECF No. 216-3.

36.     On February 11, 2021, Dennis Group prepared and circulated a spreadsheet that separated and identified the extent to which each of its then-outstanding invoices included construction (i.e., building ) work or maintenance (i.e., process) work.  Pl.'s 56(a)(2) Statement at 7 ¶ 29.

37.     Pursuant to that spreadsheet, the Mechanic's Lien contains not less than
$3,888,421.47 for work performed to support and launch the Debtors' production line.  Pl.'s
56(a)(2) Statement at 7–8 ¶ 30.

38.     Dennis Group's Mechanic's Lien asserts not less than $541,493.63 for invoices
issued after the Mechanic's Lien was recorded; $2,400.00 for project accounting expenses;
$56,475.00 for project administration expenses; $2,070,387.45 for interest charges; $337,427.07
for management fees; $80,476.32 for project support costs; and $25,982.79 for travel-related
expenses.  Pl.'s 56(a)(2) Statement at 7–8 ¶ 30.

39.     Notwithstanding Dennis Group's contentions, the Lenders assert that the
Mechanic's Lien improperly includes not less than $83,759.41 of legal fees.  Defs.' Local Rule
56(a)(1) Statement at 6–7 ¶ 31, ECF No. 215-2.

## V.    DISCUSSION

### A.  The Connecticut Mechanic's Lien Statute and the Subordination of Mechanic's Liens in Bankruptcy

Of particular importance in framing the Court's deliberations are Conn. Gen. Stat. §§ 49-
33(a), 49-34, which delineate the scope of lienable work and the timing to file a mechanic's lien,
respectively; and 11 U.S.C. § 510, which governs the treatment of subordination agreements in
bankruptcy proceedings.  Conn. Gen. Stat. § 49-33(a) provides:

> If any person has a claim for more than ten dollars for materials furnished or services
> rendered in the construction, raising, removal or repairs of any building or any of its
> appurtenances or in the improvement of any lot or in the site development or subdivision
> of any plot of land, and the claim is by virtue of an agreement with or by consent of the
> owner of the land upon which the building is being erected or has been erected . . . then
> the plot of land, is subject to the payment of the claim.

Meanwhile, Conn. Gen. Stat. § 49-34 provides that a lienor rendering construction services or
furnishing such materials must file a mechanic's lien "within ninety days after he has ceased to
do so . . . ."  In interpreting the statute, the Connecticut Supreme Court has advised that it

14

"should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials . . . [such] interpretation, however, may not depart from reasonable compliance with specific terms of the statute under the guise of a liberal construction." *F.B. Mattson Co. v. Tarte*, 247 Conn. 234, 238 (Conn. 1998).

Lastly, 11 U.S.C. § 510 provides that "a subordination agreement is enforceable in a case under [the Bankruptcy Code] to the same extent that such agreement is enforceable under applicable non-bankruptcy law." It is these statutes and relevant cases that have guided the Court's analysis below.

### B. Whether Dennis Group's Mechanic's Lien is Untimely and Invalid

#### 1. *Whether the Expansion Project was completed in August 2019*

##### a. The Lenders claim that the Expansion Project was completed in August 2019 based on Dennis Group's prior statements

At the heart of Lenders' Motion is their contention that, because Dennis Group filed its Mechanic's Lien on December 23, 2019, more than ninety days after completion of the Expansion Project in August 2019, the Mechanic's Lien is untimely and invalid. Defs.' Mem. at 9. The record confirms that Dennis Group repeatedly stated that they completed the Expansion Project sometime in August 2019. In support of their Cross-Motion, however, Dennis Group has presented considerable evidence that, despite making such statements, they were in fact undertaking substantive work on the Expansion Project long after August 2019. Pl.'s Mem. at 8–9; Pl.'s Rule 56(a)(2) Statement Ex. 32. For instance, in September 2019, Dennis Group was fabricating and installing removable wall panels to the sides of the facility's sauce-processing rooms; and in November 2019, Dennis Group was replacing five heaters in the utility areas of the facility. Pl.'s Mem. at 8–9; Pl.'s Rule 56(a)(2) Statement Ex. 32. Dennis Group has valued the work performed between August 2019 and December 2019 at approximately $1 million.

15

Pl.'s Rule 56(a)(2) Statement Ex. 31.  As such, there exists a genuine dispute of material fact as to whether the Expansion Project was completed in August 2019 such that the Mechanic's Lien is defective, thus precluding summary judgment.

> b. The Lenders claim that Dennis Group should be judicially estopped from claiming a contrary completion date to August 2019

However, the Lenders also argue that Dennis Group should be judicially estopped from claiming that the Expansion Project was completed later than August 2019 when it previously asserted as much in separate state court proceedings, to the Town in securing certificates of occupancy, and to a subcontractor in a separate commercial agreement.  Defs.' Mem. at 10–11. Were Dennis Group to be judicially estopped from claiming a completion date later than August 2019, the Mechanic's Lien would be rendered untimely and invalid.  Thus, given the dispositive nature of the Lenders' contention, further discussion of judicial estoppel and its applicability to the present facts is appropriate.

Judicial estoppel is an equitable doctrine deployed by a court to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim made by that same party in a previous proceeding.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting Moore's Federal Practice § 134.30, p. 134–62 (3d. ed. 2000)).  Because judicial estoppel is designed to protect the integrity of the judiciary and to prevent "improper use of the judicial machinery," it is to be deployed by a court in its discretion.  *Id.* (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980)).  Courts generally look for three factors in considering whether to apply the doctrine: (1) a party's new position is "clearly inconsistent" with its prior position; (2) the party's prior position has been adopted in some way by the court overseeing the corresponding proceeding; and (3) the party asserting the two positions would derive an unfair advantage

against the party seeking estoppel in the subsequent proceeding. *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d. Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750–51).

Importantly, the Second Circuit Court of Appeals ("the Second Circuit") has narrowed the second factor by requiring that a court "accept" the previous inconsistent statement by issuing a favorable ruling, which would indicate endorsement of the party's theories, claims, or statements at issue. *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (2d. Cir. 1993) (citing *Konstantinidis*, 626 F.2d at 939). In *Bates*, the Second Circuit reasoned that, were a court to countenance a contradictory statement to one previously accepted, the resulting inconsistency would certainly and negatively impact the integrity of both the judiciary itself and judicial proceedings. *Id.*; *see also Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d. Cir. 1997). The Second Circuit has also applied judicial estoppel "to sworn statements made to administrative agencies . . . ." *DeRosa*, 595 F.3d at 103.

With this in mind, the Court requested supplemental briefings on judicial estoppel's applicability to Dennis Group's inconsistent statements (ECF Nos. 322, 323, the "Supplemental Briefings"). After reviewing the Supplemental Briefings, the Court finds that the Lenders insufficiently raised and supported their contention of the factual and legal applicability of judicial estoppel in their Motion and their Reply to Dennis Group's Cross-Motion, Reply of Lenders, ECF No. 278 (the "Reply"). *See In re Weatherford Int'l Secs. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 170559, at *3 n.2 (S.D.N.Y. 2013); *Lyn v. Inc. Vill. of Hempstead*, No. 03-CV-5041 (DRH), WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ." (alteration in original) (internal quotation marks omitted)). The Lenders merely argued the existence of Dennis Group's inconsistent statements

and were silent as to the other factors of judicial (or governmental) acceptance and unfair

advantage.  Defs.' Mem at 11.  Moreover, the Lenders failed to further develop or even assert

their factual or legal contentions in their Reply.  *See* Reply.  Therefore, the Court concludes, in

the exercise of its discretion, that it would be inappropriate and unfair at this juncture to preclude

Dennis Group from asserting and supporting a contrary completion date to that of the Lenders.

*See New Hampshire*, 532 U.S. at 749.  At this juncture the Court makes no ruling that any further

legal arguments pertaining to judicial estoppel have been waived.  Nothing in this decision shall

preclude the Parties from presenting further legal authority or relevant facts at trial to support or

oppose the applicability of judicial estoppel.

Because the Court has essentially deferred whether to apply judicial estoppel to Dennis

Group's contradictory completion dates, there exists a genuine dispute of material fact as to the

completion date of the Expansion Project.  While the Court is perplexed by Dennis Group's

inconsistent statements, it is not the Court's place to resolve them at summary judgment.

> 2. *Whether work performed by Dennis Group after September 24, 2019 was trivial and non lienable*

The Lenders alternatively assert that all lienable work on the Expansion Project

concluded as late as September 24, 2019, and because Dennis Group did not record its

Mechanic's Lien within ninety days after such work concluded, the Mechanic's Lien is untimely

and invalid.  Defs' Mem. at 11–14.

In support of the foregoing, the Lenders claim that work performed after September 24,

2019 entailed "ongoing maintenance of food-processing equipment that did not alter the building

or the real property" and "[work] on . . . the equipment processing line, which involved a

complicated, step-by-step process of integrating the machines that were installed during

construction of the Expansion Project."  Defs. Mem at 12–13.  Citing *Thompson and Peck, Inc.*

*v. Division Drywall, Inc.*, 241 Conn. 370, 380 (Conn. 1997), the Lenders characterize such work as insufficiently related to physical construction or improvement of the Properties to constitute lienable work.  As previously detailed, Dennis Group has introduced countervailing material facts to recharacterize the nature, scope, and essential purpose (collectively, the "Nature") of this work.  Consequently, the precise Nature of Dennis Group's work after September 2019 also constitutes a genuine dispute of material fact precluding summary judgment.  At this juncture, neither the bare billing documents submitted nor the Lenders' assertions provide definitive, reliable guidance to the Court on this issue — as such, the Nature of Dennis Group's work between September 24, 2019 and December 23, 2019 must be resolved at trial before deciding if such work was lienable as a matter of law.

    3.  *Whether the Nature of Dennis Group's post-August 2019 work extends its deadline to file its Mechanic's Lien*

Lastly, the Lenders posit, if the Court were to disagree with the Lenders' previous arguments as to Dennis Group's untimely filing, that the time to record Dennis Group's Mechanic's Lien should commence from the date of substantial completion of the Expansion Project.  The Lenders suggest the date of substantial completion to surely have fallen before September 24, 2019, which would also render the Mechanic's Lien untimely and invalid.  *See* Defs.' Mem. at 14.

For the date of completion to be that of substantial completion, as opposed to the date on which construction services were last actually rendered, "the following conditions must be satisfied: (1) the contractor must have unreasonably delayed final completion, *and* (2) any services or materials rendered by the contractor subsequent to the date of substantial completion must have been furnished at the contractor's initiative, rather than at the owner's request."  *F.B. Mattson*, 247 Conn. at 239–40 (emphasis in original).  Moreover, "the performance of trivial

services or furnishing of trivial goods generally will not extend the time for filing the [a mechanic's lien] past the date of substantial completion" unless such work is made at the request of the owner. *Id.* (citing *Martin Tire & Rubber Co. v. Kelly Tire & Rubber Co.*, 99 Conn. 396, 400 (Conn. 1923).

The Parties vehemently dispute whether Dennis Group unreasonably delayed the Expansion Project and paint vastly different pictures of the Nature of Dennis Group's activities after August 2019. Firstly, the Lenders underscore that Dennis Group was issuing invoices to the Debtors through October 2020, almost a year after the Mechanic's Lien was filed. Defs.' Mem. at 16. While there is no dispute Dennis Group issued these invoices, the issuance of invoices alone does not necessarily mean that an unreasonable period of time elapsed between substantial completion of the Expansion Project and actual completion of the Expansion Project — the *substance* of such invoices is far more consequential to the Court's analysis, and the Lenders have not developed enough evidence for the Court to characterize those invoices as sufficiently undisputed material facts of an unreasonable delay in completion of the Expansion Project.[3]

Secondly, the Lenders further assert that Dennis Group unreasonably delayed final completion of the Expansion Project. Defs.' Mem. at 16. Both Parties agree that such delay was intentional to allow Dennis Group to undertake activities necessary to secure the Certificate of Occupancy from the Town (*see* Defs.' Mem. at 16–17; Pl.'s Mem. at 5–6). However, whereas the Lenders characterize such delay as unreasonable, Dennis Group has justified its delay by

---

[3] It is notable that Dennis Group has not yet stated when the Expansion Project was *complete* if not in August 2019 — rather, it has only stated in its responsive pleadings that the Expansion Project was *ongoing* as late as November 2019. Curiously, in its signed and sworn Mechanic's Lien, Dennis Group stated the Expansion Project was ongoing as of December 23, 2019, as opposed to having ceased at the time of filing. Defs.' Ex. 11, ECF No. 215-15. While the Lenders previously attacked the Mechanic's Lien for premature filing in their Objection, they have not since briefed this issue. Accordingly, the Court will not address that issue at this time.

providing additional evidence that the Certificate of Occupancy was necessary to receive critical additional funding from the Lenders and fully complete the Expansion Project.  Pl.'s 56(a)(2) Statement Ex. 39, Ex. 40.  Lastly, the Parties vigorously dispute whether the work Dennis Group undertook after August 2019 was trivial and have unequivocally advanced disputed facts as to whether the owner (Suri) requested such work.  *See* Pl.'s 56(a)(2) Statement at 13 ¶ 27, Ex. 32; Defs.' Mem at 15–16.  These disputes each constitute a genuine dispute of material fact that precludes a legal finding as to whether the Expansion Project was complete upon its substantial or final completion.  Summary judgment is thus precluded, and these disputes shall appropriately be resolved at trial.

### C.  Whether Dennis Group's Mechanic's Lien Contains Non-Lienable Work

   1. *Whether the Mechanic's Lien secures work unrelated to the Expansion Project*

Dennis Group's Mechanic's Lien secures amounts owed for work performed in accordance with the Contract, *see* Defs.' Ex. 11., ECF No. 215-15, whose scope is confined solely to the Expansion Project itself, *see* Defs.' Ex. 1, ECF No. 215-5.  The Lenders have expressed concern that the Mechanic's Lien encompasses work performed on the Debtors' preexisting facility and outside the scope of the Mechanic's Lien.  Defs.' Mem. at 19–20.  In apparent recognition of such concerns, Dennis Group has asserted that it "removed amounts attributable to [the preexisting facility], which Lenders had challenged."  Pl.'s Mem. at 3 n.3.  In their Reply, however, the Lenders note that a statement of account issued to Carla's Pasta, ostensibly used to calculate the value of the Mechanic's Lien, contains invoices pertaining to modifications of the preexisting facility.  Reply at 5; *see* Defs.' Ex. 92, ECF No. 215-37.  While the Parties apparently agree the costs of such modifications *should not* be secured by the Mechanic's Lien, the Parties still dispute whether such work *is* encompassed by the Mechanic's Lien in its present form.  Consequently, there exist genuine disputed issues of material fact as to

21

whether the Mechanic's Lien inappropriately contains work pertaining to the preexisting facility

and whether the aforementioned billing statement was used to calculate the amount secured by

the Mechanic's Lien.  As such, the Court must withhold summary judgment as to the Lender's

concerns pending resolution at trial.

       2.  *Whether the Mechanic's Lien contains costs unrelated to construction of the Expansion Project*

      The Lenders further argue that, because Dennis Group *managed* the Expansion Project

but did not engage in *physical* construction of the Expansion Project itself, the amount of its

claim to the Proceeds should effectively be reduced to zero.  *See* Defs.' Mem. at 22.  In apparent

reliance on *Thompson*, the Lenders propose that direct engagement in physical improvement of

the Properties defines the scope of lienable work.  *See* 241 Conn. 370 at 377–79; Defs.' Mem at

22.  However, the Lenders misunderstand Conn. Gen. Stat. § 49-33(a), as well as *Thompson* and

its progeny.  Rather, the Court understands that the services in question "must have enhanced the

property in some physical manner, laid the groundwork for physical enhancement of the

property, or [were] . . . an essential part in the scheme of development."  *Thompson*, 241 Conn.

at 379–81.  Stated differently, Conn. Gen. Stat. § 49-33(a) "does not extend to services not

directly *associated* with the physical construction or improvement of the land."  *Id.* (emphasis

added).  Under the guise of this so-called "physical enhancement" test, Connecticut courts have

subsequently recognized that surveying and engineering services, as well as architectural

services, have been essential to eventual physical construction of a project, *see New England.*

*Sav. Bank v. Meadow Lakes Realty Co.*, 243 Conn. 601, 613–15 (Conn. 1998) (engineering and

surveying services); *Weber v. Pascarella Mason St., LLC*, 103 Conn. App. 710, 717–19 (Conn.

App. Ct. 2007) (architectural services); even inspection services for a project were found to have

fallen within the ambit of Conn. Gen. Stat. § 49-33(a).  *Cianci v. Originalwerks, LLC*, 126 Conn.

App 18, 28–30 (Conn. App. Ct. 2011).

Conversely, both attorney's fees and insurance premiums were each found to be outside

the scope of Conn. Gen. Stat. § 49-33(a) due to their highly attenuated, indirect ties to physical

construction.  *See Thompson*, 241 Conn. at 379–81 (insurance premiums); *Nickel Mine Brook*

*Assocs. v. Joseph E. Sakal, P.C.*, 217 Conn. 361, 367–71 (Conn. 1991) (attorney's fees).  In

accordance with the above precedents, the Court disagrees with the Lenders' contention —

indeed, the Expansion Project (i.e., physical construction) could not have logically occurred *but*

*for* Dennis Group's project management and supervision.

That is not to say that every invoice filed by Dennis Group under the auspices of its

project management services satisfies the substantive requirements for lienability under

Connecticut law.  The Parties dispute whether certain line items, such as "Administrative

Expenses" in the amount of $56,475.00, constitute non-lienable professional services expenses or

lienable essential services expenses.  Defs.' Mem. at 23; Pl.'s Mem. at 10–11.  As discussed,

certain professional services, such as legal services, have been found non-lienable under Conn.

Gen. Stat. § 49-33(a).  Because the Parties' dispute the characterization and substance of various

aspects of Dennis Group's project management services, summary judgment on this point is

inappropriate.  The Court requires further development of the disputed factual record as to the

substance of certain of Dennis Group's costs before it can decide, as a matter of law, which of

the disputed costs are lienable under Conn. Gen. Stat. § 49-33(a).

The Lenders also claim that interest charges on past due invoices in the amount of

$2,034,690.43 must be removed from the Mechanic's Lien, though they provide no legal

rationale for that contention.  Defs.' Mem. at 23.  Dennis Group, meanwhile, has cited Conn.

Gen. Stat. § 42-150aa and Conn. Gen. Stat. § 52-249 to support their proposition that such charges may be included in the Mechanic's Lien.  Pl.'s Mem. at 14.  However, neither statute speaks to the proposition that interest associated with underlying contract terms falls within the ambit of a mechanic's lien.  If the Court is to resolve these contentions and uphold or remove charges secured by the Mechanic's Lien, it will require further development of the facts and exposition of relevant law by the Parties at trial.  As such, summary judgment excluding all accounting expenses, administrative expenses, interest charges, maintenance/equipment setup, management fees, project service costs, and travel reimbursements (as requested by the Lenders; *see* Defs.' Mem. at 25) is inappropriate at this juncture; upholding these charges as requested by Dennis Group is similarly inappropriate.

### 3.  Whether certain subcontractors performed non-lienable work

In addition, the Lenders dispute that expenses for work performed by certain of Dennis Group's subcontractors constitute lienable expenditures.  Specifically, the Lenders assert that a subcontractor who provided security services to the Expansion Project site, as well as a subcontractor who engaged in "general maintenance and cleaning" of the site, did not perform lienable work.  Defs.' Mem. at 24.  The Lenders also contend that numerous subcontractors submitted invoices for "office work" and that such work, given its ostensibly clerical Nature, is not lienable and should be struck from the Mechanic's Lien.  *Id.* at 23–24.

Dennis Group, with little elaboration, counters that such work is "a necessary part of the scheme to enhance property," and as such constitutes lienable work.  Pl.'s Mem. at 14.  At this juncture, neither party has provided sufficient material facts to fully and adequately characterize the Nature of such work for purposes of the Court's analysis and decision as a matter of law —

as such, summary judgment as to the lienability of the subcontractors' work is also inappropriate at this juncture.[4]

### 4.  Whether the Mechanics Lien inappropriately encompasses legal fees

The Lenders dispute the lienability of $83,759.41 in legal fees charged by Dennis Group's attorneys.  Connecticut law appears to be clear on this point.  The Connecticut Supreme Court has been loath to expand the scope of lienable work to include attorney's fees, even if their work pertained to critical items inherent to a construction project, because "[including] legal services could lead to the filing of a mechanic's lien by a wide range of parties who provide services to land developers, such as insurance agents, real estate agents . . . [and] financial advisers…."  Such an expansive interpretation of Conn. Gen. Stat. § 49-33(a) is neither grounded in its legislative history, *see Nickel Mine Brook Assocs.*, 217 Conn. at 369–71, nor supportive of its remedial purpose, *see F.B. Mattson*, 247 Conn. at 238.  In apparent recognition that legal fees are non-lienable, Dennis Group has stated that these legal fees were not included in the Mechanic's Lien, which the Lenders do not dispute in their Reply.  Accordingly, partial summary judgment on this issue is granted to the Lenders.

### 5.  Whether the Mechanic's Lien inappropriately encompasses post-lien invoices

Finally, the Lenders dispute the lienability of invoices totaling $541,493.63 for work performed after the Mechanic's Lien was filed.  Defs.' Mem. at 25.  Whereas the Lenders state that it is self-evident that such work is non-lienable, *id.*, Dennis Group posits that post-lien attorney's fees and interest can be rewarded in a foreclosure action — as such, principal balances incurred post-filing should be equally secured, *see* Pl.'s Mem. at 14.  To the contrary, the plain

---

[4] Consistent with their respective contentions, the Parties are expected to provide additional facts at trial such that the Court can better characterize the Nature of these disputed invoices to determine their lienability under Conn. Gen. Stat. § 49-33(a).

language of Conn. Gen. Stat. § 49-34 requires that a lienor file a mechanic's lien "within ninety days after [ceasing]" (i.e., completing) his work.  It would be antithetical to the plain meaning and legislative intent of the statute to contend that post-lien invoices are lienable when the lien itself can only be filed once the relevant work terminates.  *See* Conn. Gen. Stat. § 49-34.  Consequently, summary judgment on this issue is granted to the Lenders.[5]

## VI.    CONCLUSIONS

For the reasons stated herein, the Court adjudges as follows: (1) the Lender's Motion on their Objection and Count One of Dennis Group's Complaint is **DENIED**; (2) the Lender's Motion on Count One of its Counterclaim is **DENIED** as to the their request for a declaratory judgment that the Mechanic's Lien is untimely filed and invalid; **GRANTED** as to their request for a declaratory judgment that removes all legal fees and post-filing invoices from the Mechanic's Lien's claimed amount; and **DENIED** as to their request for a declaratory judgment that removes any other charges underlying the Mechanic's Lien's claimed amount; and (3) Dennis Group's Cross-Motion on Count One of its Complaint and Count One of the Lender's Counterclaim requesting a declaratory judgment affirming the validity and amount of its Mechanic's Lien is **DENIED**.

A separate order effectuating the foregoing, including a recalculation of the remaining sums at issue under Mechanic's Lien, shall be docketed in connection with the entry of the Final Judgment in this Adversary Proceeding.

The Court shall defer entry of any further rulings on any remaining counts of the Complaint, Counterclaim, and Objection pending a trial of those issues raised therein.

**IT IS SO ORDERED** at Hartford, Connecticut this 7th day of February 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[5] The Court expects the Parties' confirmation or evidence in subsequent proceedings that the disputed amounts in Part V(C)(4–5) herein have been removed from the total amount of the Mechanic's Lien.